UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JEANNE CHAMBERY, BRYAN ALEXA,
and CHRISTOPHER PEPERATO,
*on behalf of themselves and all other employees*
*similarly situated,*

**DECISION AND ORDER**
12-cv-06539 EAW

Plaintiffs,

v.

TUXEDO JUNCTION INC.,

Defendant.

## INTRODUCTION

Plaintiffs Jeanne Chambery, Bryan Alexa, and Christopher Peperato ("Plaintiffs") bring this action for injunctive and declaratory relief and monetary damages on behalf of themselves and all other similarly situated employees and former employees of Defendant Tuxedo Junction Inc. ("Defendant" or "Tuxedo Junction") alleging violations of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§ 201 *et seq.* and related state law claims. (Dkt. 76). Plaintiffs allege that Defendant failed to pay statutorily required overtime to employees in various management roles at all Tuxedo Junction operated locations throughout New York, Pennsylvania, and Ohio. (Dkt. 76 at ¶ 53).

Presently before the Court are the parties' Joint Motion for Final Approval of Settlement of the above-captioned matter (Dkt. 82) ("the Joint Approval Motion") and

Plaintiffs' Motion for Attorneys' Fees and Costs and Enhancement Payments to Named Plaintiffs and Participating Claimants (Dkt. 79) (the "Attorneys' Fees Motion"). Because the Court finds that the proposed settlement is fair, reasonable, and adequate, and that Plaintiffs' request for attorneys' fees, costs, and enhancement payments is reasonable, the Court grants the Joint Approval Motion and the Attorneys' Fees Motion.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are former Managers in Training and Branch Managers of Tuxedo Junction stores in New York, Pennsylvania, and Ohio. (Dkt. 76 at ¶¶ 17-22). Plaintiffs allege that during their employment, Tuxedo Junction had a policy of failing to pay statutorily mandated overtime to Managers in Training, Branch Managers, and Senior Branch Managers. (*Id.* at ¶ 31).

Original Named Plaintiff Jeanne Chambery filed her complaint on October 5, 2012. (Dkt. 1). Defendant answered the complaint on January 3, 2013. (Dkt. 20).

On November 30, 2012, Plaintiffs moved for an order certifying an FLSA collective class and providing for expedited notice to class members. (Dkt. 12). On April 17, 2013, the Court entered a stipulated order granting Plaintiffs' unopposed motion. (Dkt. 36).

The parties held two mediation sessions on June 13, 2013, and September 10, 2013. (Dkt. 66-1). The mediation sessions resulted in the parties entering into a settlement agreement in February 2014.

On February 13, 2014, the parties jointly moved for preliminary approval of the settlement agreement, for preliminary certification of three settlement classes, for appointment of Plaintiffs' counsel as class counsel, and for approval of the parties' proposed notice to the class. (Dkt. 64). The Court held a preliminary fairness hearing on March 6, 2014. (Dkt. 70). At the preliminary fairness hearing, the Court and the parties discussed numerous aspects of the proposed settlement and the proposed notice to the settlement classes, including: (1) the lack of a named plaintiff from Pennsylvania or Ohio; and (2) whether the proposed notice could be modified so as to clarify and provide additional information.

The parties entered into a Revised Joint Stipulation of Class Settlement and Release in March 2014 (hereinafter "the Settlement Agreement"). (Dkt. 73-1). The Settlement Agreement addressed the issues discussed at the preliminary fairness hearing conducted on March 6, 2014. In particular, the Settlement Agreement called for the complaint to be amended to add named plaintiffs from Ohio and Pennsylvania and assert claims for violation of the respective wage and hour statutes of those states, for three Rule 23 subclasses to be certified, and for the proposed notice to be modified so as to add additional information and highlight particularly important information. (*Id.*)

The Settlement Agreement creates a fund of $200,000.00 to settle this action and prescribes the method of allocating that settlement fund among the various putative class and collective action members. (*Id.* at ¶ 25). The settlement fund covers class members'

awards, enhancement payments, expenses and costs, interest, attorneys' fees, and the costs of administration of the settlement and claims process. (*Id.*)

The Settlement Agreement selects Rust Consulting as the claims administrator. (*Id.* at ¶ 28). The Settlement Agreement provides that class members who timely return a claim form will be paid according to a calculation that takes into account the number of weeks the class member was employed by Defendant in an applicable manager role. (*Id.* at ¶ 29(a)). The Settlement Agreement also provides for payment of up to $66,666.67 in attorneys' fees and a payment of up to $7,000 for actual litigation costs and reasonable expenses. These payments are to be made from the settlement fund. (*Id.* at ¶ 26).

The Court entered a Decision and Order on April 7, 2014, that instructed Plaintiffs to file the amended complaint on or before April 14, 2014, preliminarily certified four classes (the "Collective Class," the "New York Rule 23 Class," the "Pennsylvania Rule 23 Class," and the "Ohio Rule 23 Class") (collectively the "Settlement Classes"), preliminarily approved the Settlement Agreement, preliminarily approved Plaintiffs' counsel as class counsel for the Settlement Classes, approved the parties' proposed class notice and method of distributing the same, adopted the settlement approval process set forth in paragraph 29 of the Settlement Agreement, and set a final fairness hearing for Monday, June 30, 2014. (Dkt. 75).

Plaintiffs filed the Attorneys' Fees Motion and the Joint Approval Motion on June 23, 2014. (Dkt. 79, 82). A final fairness hearing was held on June 30, 2014. (Dkt. 85).

No class members appeared at the final fairness hearing, nor did any class members submit objections to the Settlement Agreement in advance of the final fairness hearing.

## DISCUSSION

### I.   The Joint Approval Motion

#### A.   Legal Standard

"Under Federal Rule of Civil Procedure 23, a class action cannot be settled without the approval of the District Court. The District Court must carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness, and that it was not a product of collusion." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citations omitted). FLSA settlements also require court approval. *See Misiewicz v. D'Onofrio Gen. Contractors Corp*, No. 08 CV 4377(KAM)(CCP), 2010 WL 2545439, at *3 (E.D.N.Y. May 17, 2010) ("Stipulated settlements in a FLSA case must be approved by the Court. . . .").

Approval of a proposed class action settlement is a matter of discretion for the trial court. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995). A proposed settlement should be approved if the court determines "that the settlement, taken as a whole, is fair, reasonable, and adequate." *Id.* The court must give "proper deference to the private consensual decision of the parties" in exercising its discretion. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

"A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement." *Davis v. J.P. Morgan Chase &*

*Co.*, 827 F. Supp. 2d 172, 176 (W.D.N.Y. 2011) (quotation omitted).   Assessing

procedural fairness requires the court to review the negotiating process and "ensure that

the settlement resulted from arm's length negotiations and that plaintiffs' counsel . . .

possessed the [necessary] experience and ability, and have engaged in the discovery,

necessary to effective representation of the class's interests." *Id.* (quotation omitted).

Assessing substantive fairness requires the Court to consider nine specific factors

(the "*Grinnell* factors"):

> (1) the complexity, expense and likely duration of the litigation; (2) the
> reaction of the class to the settlement; (3) the stage of the proceedings and
> the amount of discovery completed; (4) the risks of establishing liability;
> (5) the risks of establishing damages; (6) the risks of maintaining the class
> action through the trial; (7) the ability of the defendants to withstand a
> greater judgment; (8) the range of reasonableness of the settlement fund in
> light of the best possible recovery; (9) the range of reasonableness of the
> settlement fund to a possible recovery in light of all the attendant risks of
> litigation.

*McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009) (quoting *City of*

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)).

**B.     Certification of the Rule 23 Settlement Classes**

In order to approve the Settlement Agreement, the Court must first grant final

certification of the parties' proposed Rule 23 Settlement classes (the New York Rule 23

Class, the Pennsylvania Rule 23 Class, and the Ohio Rule 23 Class) (collectively the

"Rule 23 Settlement Classes")[1].  These classes are defined as follows:

---

[1]     The Collective Class was already certified by the Court.  (Dkt. 36).

The "New York Rule 23 Class" shall include all individuals who worked for Defendant in New York State in the job titles of Senior Branch Manager, Branch Manager, Manager in Training, and Assistant Manager at any time from October 5, 2006 to the date of entry of the Preliminary Approval Order.

The "Pennsylvania Rule 23 Class" shall include all individuals who worked for Defendant in Pennsylvania in the job titles of Senior Branch Manager, Branch Manager, Manager in Training, and Assistant Manager at any time from October 5, 2009 to the date of entry of the Preliminary Approval Order.

The "Ohio Rule 23 Class" shall include all individuals who worked for Defendant in Ohio in the job titles of Senior Branch Manager, Branch Manager, Manager in Training, and Assistant Manager at any time from October 5, 2009 to the date of entry of the Preliminary Approval Order.

(Dkt. 73-1 at ¶ 4).

Certification of a class for settlement purposes is appropriate "where the proposed class and class representative satisfy the four requirements of Federal Rule of Civil Procedure 23(a) — numerosity, commonality, typicality, and adequacy — as well as one of the three subsections of Rule 23(b)." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009). "In deciding certification, 'courts must take a liberal rather than restrictive approach in determining whether the plaintiff satisfies these requirements and may exercise broad discretion in weighing the propriety of a putative class.'" *Id.* at 158 (quoting *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 72 (E.D.N.Y. 2004)).

The Court certifies the New York Rule 23 Class, the Pennsylvania Rule 23 Class, and the Ohio Rule 23 Class as those terms are defined in paragraph 4 of the Settlement Agreement for the reasons set forth in detail in its Decision and Order entered April 7, 2014 (Dkt. 75), and reiterated below.  These proposed classes meet all the requirements for class certification under Rule 23(a) and (b)(3).

### 1.   Numerosity

With regard to numerosity, this element is satisfied if the class is sufficiently numerous that joinder is "impracticable."  *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).  Here, the New York Rule 23 Class has approximately 62 members and therefore satisfies this element because numerosity is presumed at a level of 40 members.  *Consol. Rail. Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

The Pennsylvania and Ohio classes are also numerous.  Although they contain only 29 members and 15 members, respectively, courts have not hesitated to certify subclasses with fewer than 40 members where joinder would be impracticable due to geographic dispersion or other factors.  *See, e.g., Encinas v. J.J. Drywall Corp.*, 265 F.R.D. 3, 8 (D.D.C. 2010).  Joinder would be impracticable in this case because the class members are geographically dispersed, and because the nature of the case would make it difficult for claimants to institute individual suits.  *See Robidoux*, 987 F.2d at 936.

### 2.   Commonality

The Rule 23 Settlement Classes also satisfy the commonality requirement. Commonality occurs where "[the] class members' claims share a common question of

law or fact." *Cohen*, 262 F.R.D. at 158.   The common issues of law and fact in this case center around Defendant's policies regarding the classification of class members as exempt employees, the duties performed by class members, and the hours that class members were required to work.   Courts have not hesitated to find the commonality requirement met in comparable circumstances.   *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012) (collecting cases).

### 3.   Typicality

The Named Plaintiffs are also typical of the class members "because [the Named Plaintiffs'] claims arose from the same factual and legal circumstances that form the bases of the Class Members' claims." *Id.*; *see also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 182 (W.D.N.Y. 2005) (finding typicality because "[plaintiff's] claims arise from the same course of events as those raised by all other class members – that is, all class members, including [plaintiff], allege that [defendant] failed to pay them . . . overtime wages for hours worked in excess of forty per week during the relevant time period"). The typicality requirement has therefore been met in this case.

### 4.   Adequacy

The Named Plaintiffs satisfy the adequacy requirement.   The adequacy requirement has two elements: "(1) the representative plaintiff's attorneys must be qualified, experienced, and generally able to conduct the litigation, and (2) the plaintiff's interests must not be antagonistic to those of the remainder of the class." *Cohen*, 262

F.R.D. at 158. Here, none of the Named Plaintiffs have a conflict that would defeat their representative status, and Plaintiffs' counsel is experienced and competent.

### 5.    Rule 23(b)(3)

The Rule 23 Settlement Classes also satisfy Rule 23(b)(3) because the Court finds "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

Here, resolution of the common issues of fact and law previously identified (for example, the legality of Defendant's policies regarding classification of the class members as exempt employees) would permit significant resolution of this matter. The superiority requirement is also met here because the commencement of individual actions would be cost-prohibitive (because the potential recovery is far outweighed by the potential cost) and because the Defendant's headquarters are in this District, making this a desirable forum.

The parties have demonstrated that the requirements of Federal Rule of Civil Procedure 23(a) and (b) are met in this case. The Court therefore affirms as final its

certification of the New York Rule 23 Class, the Pennsylvania Rule 23 Class, and the Ohio Rule 23 Class for the purpose of settlement. *See Frank*, 228 F.R.D. at 184.

C.   **The Settlement Agreement is Fair, Reasonable, and Adequate**

The Court has carefully considered the parties' submissions and the information provided at both the preliminary approval hearing and the final fairness hearing and finds that the Settlement Agreement is fair, reasonable, and adequate.

With respect to procedural fairness, "there is no indication that the settlement agreement is the product of anything other than arm's-length negotiations," *Davis*, 827 F. Supp. 2d at 177, and in fact, the Settlement Agreement is the product of two extensive mediation sessions with a court-approved mediator. *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012) (involvement of an experienced mediator is "a strong indicator of procedural fairness"). In addition, the parties are represented by experienced counsel and counsel for both sides have represented to the court that the Settlement Agreement was the product of extensive negotiations. Therefore, the Court concludes that the Settlement Agreement is fair from a procedural standpoint. *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (finding procedural fairness in part because parties were represented by experienced counsel and there was evidence of arm's-length negotiations).

With respect to substantive fairness, consideration of the *Grinnell* factors leads to the conclusion that the Settlement Agreement should be approved. This case is moderately complex, involving both federal claims and claims under the laws of three

states, and a trial in this matter would likely be lengthy, costly, and complicated. *See*

*Morris*, 859 F. Supp. 2d at 619 (trial of case involving FLSA and NYLL claims was

likely to be lengthy and complicated); *Alleyne v. Time Moving & Storage Inc.*, 264

F.R.D. 41, 56 (E.D.N.Y. 2010) (same); *see also Frank*, 228 F.R.D. at 185 ("Although this

case is less complex than many, the costs of continued litigation will be substantial and

will quickly outweigh the recovery that could be achieved.").

The reaction of the class to the Settlement Agreement has been favorable. Thirty-

nine individuals (approximately thirty-seven percent of eligible class members) have

opted in to the settlement, while only two individuals have opted out. (Dkt. 84-1 at ¶¶ 13,

15). This is an unusually high participation rate for a "claims made"[2] settlement

agreement such as the one in this case. *See, e.g., Sylvester v. CIGNA Corp.*, 369 F. Supp.

2d 34, 52 (D. Me. 2005) ("'[C]laims made' settlements regularly yield response rates of

10 percent or less."). Additionally, no class members have objected to the Settlement

Agreement. (Dkt. 84-1 at ¶ 16). *See Davis*, 827 F. Supp. 2d at 177 (class reaction

favorable where only eleven members opted out and only three objected); *Alleyne*, 264

F.R.D. at 56 (class reaction favorable where less than 1% of class objected and only

seven class members opted out).

With respect to the stage of the proceedings and the amount of discovery that has

occurred, "a sufficient factual investigation must have been conducted to afford the Court

---

[2]    A "claims made" settlement agreement is one in which the defendant agrees to pay
a monetary settlement award to qualifying class members who mail in a claim for a
payment.

the opportunity to intelligently make an appraisal of the Settlement." *Frank*, 228 F.R.D. at 185 (quotation omitted). Here, the parties have represented to the Court that they "exchanged a significant amount of data including time and payroll records." (Dkt. 66 at ¶ 7). "Thus, while this case is still in the relatively early stages of discovery, the information exchanged . . . has been sufficient to determine the unpaid overtime compensation due to each plaintiff." *Frank*, 228 F.R.D. at 185 (parties had exchanged information regarding identities of potential class members, the hours they worked, and the relevant rates of pay). This factor favors approval of the Settlement Agreement.

"In considering the risks of establishing liability and damages, and of maintaining the class action through the trial, it is important to keep in mind that this Court's role is not to 'decide the merits of the case or resolve unsettled legal questions.'" *Davis*, 827 F. Supp. 2d at 177 (quoting *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981)). Instead, "'the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement.'" *Id*. at 177-78 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004)).

This is a vigorously contested case. Although the Court need not "scrutinize the merits of the parties' positions, . . . it is fair to say that there would have been an uncertain outcome, and significant risk on both sides, had this case gone to trial." *Id*. at 178. In particular, the parties contend that there are highly contested issues regarding the impact of the United States Supreme Court's recent decision in *Wal-Mart Stores, Inc. v.*

*Dukes*, 131 S. Ct. 2541 (2011), that would require resolution. The fourth, fifth, and sixth *Grinnell* factors therefore favor approval of the Settlement Agreement.

The seventh *Grinnell* factor (the ability of the defendants to withstand a greater judgment) strongly favors approval of the Settlement Agreement. The parties have represented to the Court that the Defendant's financial position played a large role in reaching settlement. Indeed, Defendant had to seek bank financing in order to agree to the settlement terms currently before the Court. Moreover, even if Defendant was able to withstand a greater judgment, a "defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quotation and citation omitted).

With respect to the eighth and ninth *Grinnell* factors (the range of reasonableness of the settlement fund in light of the best possible recovery and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation), "the determination of whether a settlement amount is reasonable does not involve the use of a mathematical equation yielding a particularized sum." *Morris*, 859 F. Supp. 2d at 621 (quotation omitted). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Frank*, 228 F.R.D. at 186 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). Here, Plaintiffs' counsel indicated to the Court that the highest estimate of potential damages in this case was somewhere in the range of $1.9

million to $3 million.  Defendant, unsurprisingly, maintains that the potential recovery is much lower.  In any event, a $200,000 settlement is reasonable where the potential recovery is $3 million, especially when taking into consideration Defendant's financial position and the risks of litigation.  *See Morris*, 859 F. Supp. 2d at 621 (approving settlement of $2.5 million over objection that best possible recovery was $125 million). The Settlement Agreement provides for meaningful recovery for class members and "balances the damages potentially recoverable by the plaintiffs with the genuine risks of continued litigation." *Frank*, 228 F.R.D. at 186-87.

Based on the foregoing, the Court finds that the Settlement Agreement is the result of a procedurally fair process and that the *Grinnell* factors weigh in favor of approval. As a result, the Court finds that the Settlement Agreement is fair, reasonable, and adequate.

**D.    Appointment of Plaintiffs' Counsel as Class Counsel and of the Named Plaintiffs as Class Representatives**

The Court previously preliminarily appointed Thomas & Solomon LLP as class counsel in its Decision and Order dated April 7, 2014.  (Dkt. 75 at 10).  The Court affirms its prior ruling that Thomas & Solomon LLP meets all the criteria of Federal Rule of Civil Procedure 23(g).  *See, e.g., Frank,*  228 F.R.D. at 182 (approving Thomas & Solomon LLP as class counsel in large-scale wage action).

The Court also preliminarily found that the Named Plaintiffs Jeanne Chambery, Bryan Alexa, and Christopher Peperato were adequate class representatives for the

Settlement Classes.  (Dkt. 75 at 13).  The Court affirms that ruling for the reasons discussed in Part I(B) of this Decision and Order.

## II.    The Attorneys' Fees Motion

Plaintiffs have also moved for an award of attorneys' fees, costs, and enhancement awards to the named plaintiffs and others.  (Dkt. 79).  In accordance with the Settlement Agreement, Defendant has not opposed these requests.  (*See* Dkt 73-1 at ¶¶ 26-27).  For the reasons set forth below, the Court grants Plaintiffs' Attorneys Fees Motion.

### A.    The Attorneys' Fees Request is Fair and Reasonable

As with all aspects of the Settlement Agreement, the Court must carefully scrutinize the provisions providing for the payment of attorneys' fees, costs, and enhancement payments to ensure that they are fair and reasonable.  *See Davis*, 827 F. Supp. 2d at 183.  The standard can be summarized as follows:

> To determine what qualifies as a reasonable attorney's fee in the class action context, a district court may use either of two distinct methods.  The first is the lodestar-type methodology, under which the court reviews a fee application submitted by counsel to ascertain the number of hours reasonably billed to the class, and then multiplies that figure by an appropriate hourly rate.  Under the second and simpler approach, the court approves an award of a percentage of the class settlement fund to compensate counsel, with reference to the lodestar or presumptively reasonable fee calculation as a cross-check.  Regardless of whether the lodestar or percentage method is chosen, the Court's assessment of the reasonableness of the fee is guided by the same criteria: the time and labor expended by counsel; the magnitude and complexities of the litigation; the risk borne in the litigation; the quality of the representation; the requested fee in relation to the settlement; and public policy considerations.

*Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 58 (E.D.N.Y. 2010).

The trend in the Second Circuit has been towards using the percentage method for awarding fees in class action cases. *See Davis*, 827 F. Supp. 2d at 183-84 (collecting cases). Plaintiffs request that the Court use the percentage method in this case, and award a fee of $66,660.00 or approximately one-third of the total settlement fund. (Dkt. 80 at 2).

An award of one-third of the total settlement fund is not unreasonable on its face. *See Morris*, 859 F. Supp. 2d at 621 (a request for one-third of the settlement fund "is reasonable and 'consistent with the norms of class litigation in this circuit.'") (quoting *Gilliam v. Addicts Rehab. Center Fund*, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)). Nevertheless, the Court must perform a lodestar cross-check and consider the additional factors set forth in *Alleyne*.

At the request of the Court, Plaintiffs' counsel has submitted for an *in camera* review documentation regarding the hours expended by Plaintiffs' counsel and the rates charged. The documents submitted to the Court show that Plaintiffs' counsel expended approximately 1100 hours on this litigation. The documents submitted to the Court further indicate that at Thomas & Solomon LLP's standard hourly rates, the hourly fee for this litigation would be approximately $280,000.

"Where the lodestar method is used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Davis*, 827 F. Supp. 2d at 184 (quotation and citation omitted). Moreover, it is not

- 17 -

necessary for the Court to reach a conclusion as to the reasonableness of the standard hourly rates charged by Thomas & Solomon LLP, and the Court specifically does not reach any such conclusion. Due to the number of hours expended on this matter by the firm, significantly lower hourly rates could be applied to the hours worked and the hourly fee would still equate to an amount far exceeding the $66,660.00 sought in the Attorneys' Fees Motion. Thus, the lodestar cross-check supports approval of Plaintiffs' attorneys' fees request.

The other criteria that courts use in assessing the reasonableness of an attorneys' fees request (namely, the time and labor expended by counsel; the magnitude and complexities of the litigation; the risk borne in the litigation; the quality of the representation; the requested fee in relation to the settlement; and public policy considerations) also support approval of Plaintiffs' request. It is clear that Plaintiffs' counsel performed significant work on this matter. Although this litigation did not involve as many potential class members as some wage claim actions, it was moderately complex, involving federal law and the laws of three states, and required Plaintiffs' counsel to perform significant investigation. Plaintiffs' counsel took this matter on a contingency fee basis, and therefore ran the risk of recovering no fees at all. Plaintiffs' counsel advocated zealously on behalf of their clients and they have achieved a settlement result that will provide class members with meaningful relief. Finally, a request for one-third of the entire settlement fund is reasonable. *See Morris*, 859 F. Supp. 2d at 621; *see also Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir.

2007) ("The entire [settlement fund], and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class.   An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not.").

For the foregoing reasons, the Court awards Thomas & Solomon LLP $66,660.00 in attorneys' fees, to be paid from the settlement fund as set forth in the Settlement Agreement.

### B.   The Request for Costs is Fair and Reasonable

Plaintiffs' counsel also seeks $6,767.16 in litigation costs and $9,997.00 in administrative costs to be paid to third-party administrator Rust Consulting.   "Courts typically allow counsel to recover their reasonable out-of-pocket expenses."   *Morris*, 859 F. Supp. 2d at 624 (permitting reimbursement of "filing fees, telephone charges, postage, transportation, working meals, photocopies, and electronic research.").

Here, at the Court's request, Plaintiffs' counsel has provided for *in camera* review a breakdown of the costs incurred in this litigation.  Plaintiffs' counsel has affirmed to the Court under penalties of perjury that these costs were, in fact, incurred by the firm.  On their face, the costs do not appear unreasonable based on the Court's understanding that the costs were actually incurred.   The Court therefore approves Plaintiffs' counsel's request for reimbursement of $6,767.16 in costs, to be paid from the settlement fund as set forth in the Settlement Agreement.

The Court has also reviewed *in camera* a declaration provided by Rust Consulting regarding its administrative fees.   Rust Consulting has performed and will perform significant administrative duties with respect to the Settlement Agreement.  In particular, Rust Consulting was responsible for preparing, printing, and mailing the notice of the class and collective action settlement, was responsible for receiving and reviewing the claims forms submitted by claims members, and will be responsible for drafting and mailing settlement award checks to the class members.  Rust Consulting also obtained and maintained both a mailing address and a phone number for communications with class members.  Rust Consulting will also be responsible for providing class members with tax reporting information (namely W2 and/or 1099 forms).

The fee charged by Rust Consulting includes the above services, postage, development of a database of class members, and project management and technical consulting.  Based on the information provided to the Court, the fee is reasonable and fair.  The Court therefore grants Plaintiffs' counsel's request for reimbursement of Rust Consulting's fee and awards $9,997.00 in administrative costs, to be paid from the settlement fund as set forth in the Settlement Agreement.

### C.    The Enhancement Awards are Fair and Reasonable

Finally, Plaintiffs request the Court's approval of the enhancement awards set forth in the Settlement Agreement.  These enhancement awards consist of $3,500.00 to Named Plaintiff Jeanne Chambery; $1,000.00 to Named Plaintiffs Christopher Peperato and Bryan Alexa; $1,000.00 to participating class members who submitted an affirmation

or affidavit to the Court in support of Plaintiffs' case; and $200.00 to participating class members who filed a consent to join the lawsuit. (Dkt. 73-1 at ¶ 27).

"Incentive awards are not uncommon in class action cases and are within the discretion of the court." *Frank*, 228 F.R.D. at 187. In particular, "service awards [to plaintiffs] are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Morris*, 859 F. Supp. 2d at 624. "The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claims, and, of course, the ultimate recovery." *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997). "[Incentive] awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Frank*, 228 F.R.D. at 187.

Here, the enhancement awards provided for in the Settlement Agreement are reasonable and compensate Named Plaintiffs and the other eligible class members for the

risk they undertook in attaching their name to this litigation and for the time and effort they expended in assisting with the prosecution of this action. (*See* Dkt. 81 at ¶¶ 2-15) Based on information provided to the Court at the final fairness hearing, the enhancement payments are likely to amount to, at most, $10,700.00, or approximately five percent of the total settlement fund. This amount is reasonable. *See Frank*, 228 F.R.D. at 187-88 (approving enhancement award to class representative totaling 8.4% of the total settlement fund). The Court therefore approves the enhancement awards as set forth in the Settlement Agreement.

## CONCLUSION

By reason of the foregoing, it is hereby ordered as follows:

1.     The terms and conditions of the Settlement Agreement are hereby approved. Capitalized terms used in this Decision and Order and not otherwise defined herein shall have the definitions assigned to them in the Settlement Agreement.

2.     The Court certifies the following settlement classes for settlement purposes:

      a.     The "Collective Class" shall include Plaintiffs and all individuals who timely returned a valid and effective Claim Form containing a consent to join the Lawsuit, and who worked for Defendant in the job titles of Senior Branch Manager, Branch Manager, Manager in Training, and/or Assistant Manager at any time from October 5, 2009, to April 7, 2014, the date of the Preliminary Approval Order.

b.     The "New York Rule 23 Class" shall include all individuals who worked for Defendant in New York State in the job titles of Senior Branch Manager, Branch Manager, Manager in Training, and Assistant Manager at any time from October 5, 2006, to April 7, 2014, the date of the Preliminary Approval Order.

c.     The "Pennsylvania Rule 23 Class" shall include all individuals who worked for Defendant in Pennsylvania in the job titles of Senior Branch Manager, Branch Manager, Manager in Training, and Assistant Manager at any time from October 5, 2009, to April 7, 2014, the date of the Preliminary Approval Order.

d.     The "Ohio Rule 23 Class" shall include all individuals who worked for Defendant in Ohio in the job titles of Senior Branch Manager, Branch Manager, Manager in Training, and Assistant Manager at any time from October 5, 2009, to April 7, 2014, the date of the Preliminary Approval Order.

3.     The Court finds that the Named Plaintiffs Jeanne Chambery, Bryan Alexa, and Christopher Peperato are adequate class representatives for the Settlement Classes.

4.     The Court finds that Patrick J. Solomon, Jessica L. Witenko, and Guy A. Talia of the firm Thomas & Solomon LLP, 693 East Avenue, Rochester, New York, are adequate to serve as Class Counsel for the Settlement Classes and appoints them as Class Counsel for the Settlement Classes.

5.     The Notice and Claim Forms that were sent to the Settlement Classes pursuant to this Court's April 7, 2014, Decision and Order (Dkt. 75) were accurate, objective and informative and were the best practicable means of providing reasonable notice to Class Members of, among other things: (a) the proposed settlement and its effect; (b) the process available to them to request a payment under the settlement; (c) how they could object or opt-out; (d) the time and place of the final fairness hearing; and (e) the applications to be made by class counsel for (i) attorneys' fees and costs and (ii) enhancement payments.     The Court finds that notice of these matters to the Class Members was accomplished in all material respects and that such notice fully met the requirements of Federal Rule of Civil Procedure 23, due process, the Constitution of the United States, the laws of the State of New York, and all other applicable laws.

6.     The Settlement and the Settlement Agreement are binding in all respects on the Named Plaintiffs and all Class Members who did not timely submit a valid and effective written request for exclusion from the Settlement Classes pursuant to the provisions of Paragraphs 30 and 31 of the Settlement Agreement.

7.     The Court orders that the qualified settlement fund (as defined in the Settlement Agreement) be funded and that payments be made according to the provisions of the Settlement Agreement following the Effective Date of the Settlement Agreement.

8.     The Court finds that the administrative costs in the amount of $9,997.00 are reasonable and approves payment to the Claims Administrator of such administrative

costs from the qualified settlement fund as specified in the Settlement Agreement following the Effective Date of the Settlement Agreement.

9.    If, for any reason, the Effective Date of the Settlement Agreement does not occur, the Settlement Agreement shall be deemed null and void, and shall not be used for any purpose whatsoever in any further proceeding(s) in the Action or in any other suit, action, or proceeding; the Court's certification of the Settlement Classes shall be void and of no effect; this Order shall be vacated; and the Parties will be returned to their respective positions *nunc pro tunc* as those positions existed immediately prior to the execution of the Settlement Agreement.

10.    In accordance with Paragraphs 26 and 29 of the Settlement Agreement, Class Counsel is hereby awarded attorneys' fees and costs (including Plaintiffs' mediation fees and costs) in the amount of $73,427.16, to be paid from the qualified settlement fund as specified in the Settlement Agreement following the Effective Date of the Settlement Agreement.  This award represents approximately thirty-seven percent of the total settlement amount.  Such an award is reasonable for the reasons discussed above.

11.    In accordance with Paragraphs 27 and 29 of the Settlement Agreement, Named Plaintiff Jeanne Chambery is hereby awarded an enhancement payment in the amount of $3,500.00 to be paid from the qualified settlement fund as specified in the Settlement Agreement following the Effective Date of the Settlement Agreement.

12.   In accordance with paragraphs 27 and 29 of the Settlement Agreement, Named Plaintiffs Bryan Alexa, and Christopher Peperato are hereby awarded an enhancement payment in the amount of $1,000.00 to be paid from a qualified settlement fund as specified in the Settlement Agreement following the Effective Date of the Settlement Agreement.

13.   In accordance with paragraphs 27 and 29 of the Settlement Agreement, any Participating Claimants other than Plaintiff Jeanne Chambery who submitted an affidavit or affirmation to the Court in support of Plaintiffs' case are hereby awarded an enhancement payment in the amount of $1,000.00 to be paid from a qualified settlement fund as specified in the Settlement Agreement following the Effective Date of the Settlement Agreement.

14.   In accordance with paragraphs 27 and 29 of the Settlement Agreement, any Participating Claimants who filed a Consent to Join this lawsuit, other than Plaintiff Jeanne Chambery, are hereby awarded an enhancement payment in the amount of $200.00 to be paid from a qualified settlement fund as specified in the Settlement Agreement following the Effective Date of the Settlement Agreement.

15.   These enhancement payments are in addition to any amounts the Named Plaintiffs or Participating Claimants may otherwise receive from the Settlement as members of the Settlement Classes under the Settlement Agreement.

16.   Upon the Effective Date of the Settlement Agreement, this Action shall be deemed dismissed with prejudice in its entirety. The parties are to bear their own costs,

except as otherwise provided in the Settlement Agreement and this Order. The Court shall retain jurisdiction over this Action for the purpose of resolving any issues relating to the administration, implementation, or enforcement of the Settlement Agreement and this Order.   The parties are to inform the Court immediately upon the occurrence of the Effective Date of the Settlement Agreement.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:       July 25, 2014
             Rochester, New York